UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AHMED M. ELMALKY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| EVELYN UPCHURCH, Director Texas | § | |
| Service Center, ANGELA K. BARROWS, | § | CIVIL ACTION NO. 3:06-CV-2359-B |
| Director, Dallas District Office, | § | |
| EMILIO GONZALEZ, Director, | § | |
| Citizenship and Immigration Services, | § | |
| MICHAEL CHERTOFF, Secretary, | § | |
| Department of Homeland Security, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM ORDER

Plaintiff Ahmed Maged Elmalky filed this mandamus action on December 21, 2006, asking

this Court to compel the Defendants to adjudicate his pending I-485 application for an adjustment

of status and his I-765 application for employment authorization, both of which he claims have been

pending for an unreasonably long period of time.  On February 22, 2007, Defendants filed a motion

to dismiss Elmalky's complaint (doc. 7) for lack of subject matter jurisdiction under Rule 12(b)(1),

for failure to state a claim under Rule 12(b)(6), and for improper venue under Rule 12(b)(3).  For

the reasons that follow, the Court DENIES Defendants' motion in its entirety.

## I.  Background[1]

Elmalky is a native and citizen of Egypt.  (Compl. ¶ 3).  On May 20, 2004 he filed in the

---

[1]The background facts are derived from Elmalky's complaint and on undisputed facts gleaned from
the parties' court papers and corresponding attachments.  Where there may be a dispute over a stated fact
the Court has so indicated by claiming the fact as one stated by that party to be true.

United States Citizenship and Immigration Service's ("USCIS") Dallas District Office a form I-485 application for an adjustment of status to that of lawful permanent resident on the basis of his marriage to a United States citizen. (*Id.* at ¶ 8). On October 17, 2005, Elmalky was interviewed for the purpose of completing the adjudication of the application. (*Id.* at ¶ 10). He was told that his application was complete but that it could not be approved at that time because his name was undergoing security background checks. (*Id.*).

At the same time Elmalky filed his I-485 application, he also filed an I-765 application for employment authorization. The I-765 application was approved on February 14, 2005, and his employment authorization lasted until December 15, 2005. (*Id.* at ¶¶ 9, 12). Elmalky was still able to continue working after the authorization expired because his H-1B status remained valid until December 16, 2006. (*Id.* at ¶ 12). In anticipation of the expiration of his H-1B status, Elmalky filed, on August 15, 2006, another I-765 form requesting employment authorization with the Texas Service Center. (*Id.*). To date both the I-765 and I-485 applications remain pending.

On December 21, 2006, Elmalky filed a complaint in this Court seeking mandamus, declaratory, and injunctive relief against Defendants. He complains that Defendants have unreasonably delayed in adjudicating his applications, and he asks the Court to force them to do so. On February 22, 2007, Defendants filed a motion to dismiss Elmalky's complaint. Defendants argue that the Court lacks subject matter jurisdiction to compel the adjudication of Elmalky's I-485 adjustment of status application and that, even if subject matter jurisdiction exists, Elmalky's complaint fails to set forth sufficient factual allegations showing that Defendants unreasonably delayed in acting on that application. Defendants also contend that Elmalky's claim to compel the adjudication of his I-765 application for employment authorization should be denied for lack of

proper venue, or alternatively transferred to Missouri, where that application is now pending.

## II.  I-485 Application for Adjustment of Status

### A.    *Legal Standards*

Defendants' motion to dismiss Elmalky's complaint as it pertains to his I-485 application is premised on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Federal district courts are courts of limited jurisdiction, and they may only exercise such jurisdiction as is expressly conferred by federal statute.  *See Le Mieux Bros. v. Tremont Lumber Co.*, 140 F.2d 387, 389 (5th Cir. 1944).  Rule 12(b)(1) provides the vehicle through which subject matter jurisdiction may be challenged.   The burden of establishing subject matter jurisdiction rests with the party seeking to invoke it.  *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  In evaluating a challenge to subject matter jurisdiction the court is free to weigh the evidence and resolve factual disputes so that it may be satisfied that jurisdiction is proper.  *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).  In conducting its inquiry the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Id.*

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Kaiser Aluminum & Chem. Sales, Inc.  v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The Court liberally construes the complaint in the plaintiff's favor, and all pleaded facts are taken as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986).  Unless it appears beyond doubt that the plaintiff cannot prove any set of facts entitling it to relief, the complaint should not be dismissed.  *Conley v. Gibson*, 355 U.S. 42, 45 (1957).

### B.    *Elmalky Has Sufficiently Established Subject Matter Jurisdiction and Has Stated a Claim*

Elmalky maintains that this Court may exercise jurisdiction in this case under the Mandamus Act, 28 U.S.C. § 1361 and/or the Administrative Procedures Act ("APA"), 5 U.S.C. § 551, *et seq.* The mandamus statute provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction depends on "whether mandamus would be an appropriate means of relief." *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). Mandamus relief is "extraordinary", requiring a plaintiff to establish that: (1) he has a clear right to the relief sought; (2) the defendant holds a plainly defined and mandatory, nondiscretionary duty to do the act in question; and 3) no other adequate remedy is available. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992).

The APA does not provide an independent basis for subject matter jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977). But the APA, in conjunction with this Court's federal question jurisdiction, 28 U.S.C. § 1331, may vest the Court with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1); *Alkenani v. Barrows*, 356 F.Supp.2d 652, 656 (N.D. Tex. 2005). The APA also authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]" 5 U.S.C. § 702. The statute expressly defines "agency action" to include the "failure to act." 5 U.S.C. § 551(13). The APA does not apply, however, to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Thus, jurisdiction under either the mandamus statute or the APA is appropriately exercised only if Elmalky can establish that the Defendants had a clear, nondiscretionary duty to adjudicate

his I-485 application within a certain period of time. Under § 245 of the Immigration and Nationality Act ("INA"), the Attorney General may, "in his discretion and under such regulations as he may prescribe", adjust an alien's status to that of an alien lawfully admitted for permanent residence. 8 U.S.C. § 1255(a). Though the decision whether to grant or deny an application for adjustment is plainly made discretionary under the statute, the regulations and the majority of court decisions make clear that immigration officials have a nondiscretionary duty to *act* on an application. *See e.g.* 8 C.F.R. § 245.2 (providing that applicant "*shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial.") (emphasis added); *Yu v. Brown*, 36 F.Supp.2d 922, 931 (D.N.M. 1999) ("All other courts addressing this question have held that INS has a non-discretionary duty to process applications for LPR status as well as all other immigration applications."); *Duan v. Zamberry*, 2007 WL 626116, at *3 (W.D. Pa. Feb. 23, 2007) ("The weight of authority . . . supports a finding that Defendants have a non-discretionary duty to process or adjudicate an adjustment application[.]"); *Haidari v. Frazier*, 2006 WL 3544922, at *4 (D. Minn. Dec. 8, 2006) (distinguishing the discretionary decision of whether to grant or deny an adjustment application from the mandatory duty to make any decision); *Hu v. Reno*, 2000 WL 425174, at *3 (N.D. Tex. April 18, 2000) ("Although the INS is vested with broad discretion in making the ultimate decision whether to grant an application for adjustment to permanent resident status, it has a nondiscretionary duty to process the application.").[2]

---

[2] Defendants attach to their reply brief an unpublished order entered December 11, 2006, in which Judge Godbey dismissed a mandamus complaint for lack of jurisdiction, finding that the adjudication of an application for adjustment of status is a discretionary decision. *See Sozanski v. Chertoff*, No. 3:06-CV-0993-N, at 2-3 (N.D. Tex. Dec. 11, 2006). In a more recent opinion, however, Judge Godbey has held that the USCIS has a nondiscretionary duty to act on an application for adjustment of status within a reasonable time. *See Alsharqawi v. Gonzales*, No. 3:06-CV-1165-N, at 6-9 (N.D. Tex. March 14, 2007).

That said, neither the immigration statutes nor the regulations prescribe any sort of deadline by which USCIS must exercise its mandatory duty to render a decision. Such decisions cannot be held in abeyance indefinitely, however. *See Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004) ("Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so."). Section 555(b) of the APA provides, and many courts have held, that in the absence of any direct authority providing otherwise, an agency, including the USCIS, must conclude a matter presented to it "within a reasonable time". 5 U.S.C. § 555(b); *Alkenani*, 356 F.Supp.2d at 656 ("Although immigration officials are vested with broad discretion in making the ultimate decision whether to grant or deny an application for naturalization, they have a non-discretionary duty to process the application within a reasonable time."); *Kim*, 340 F.Supp.2d at 389 ("Whether to adjudicate an adjustment application is not discretionary, but governed by section 6 of the APA, requiring the CIS to take action on a matter presented to it 'within a reasonable time.'"); *Yu*, 36 F.Supp.2d at 931 ("[T]he APA itself imposes on [defendants] the duty to complete action on plaintiff's application within a reasonable time.");*Valenzuela v. Kehl*, 2006 U.S. Dist. LEXIS 61054, at * 22-23 (N.D. Tex. Aug. 23, 2006) ("Many courts, including the United States District Court for the Northern District of Texas have held in immigration cases that petitioners and applicants have a clear right to have their adjustment applications and visa petitions adjudicated within a reasonable time of their filing."); *Fu v. Reno*, 2000 WL 1644490, at *4 (N.D. Tex. Nov. 1, 2000) (finding that I-485 applicants "have a clear right to have their applications processed 'within a reasonable time'" based on § 555(b)).

Defendants nevertheless insist that the "USCIS must conduct background checks and has the discretion to withhold adjudication if necessary." (Defs.' Mot. at 6). They cite to 8 C.F.R. §

103.2(b)(7), which provides that the USCIS "may require the taking of testimony, and may direct any necessary investigation", and to 8 C.F.R. § 103.2(b)(18), which authorizes a district director to "authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion[.]" Under § 103.2(b)(18), the district director may postpone the adjudication of an application for up to two years.  After that, authority is bestowed on the regional commissioner to authorize keeping an application in abeyance for another six months.  If the investigation is still not completed at the end of that time, shared authority to continue withholding adjudication for successive six-month periods devolves upon the Associate Commissioner, Examinations, and the Associate Commissioner, Enforcement.

Defendants are correct that the decision to withhold adjudication under § 103.2(b)(18) is a discretionary one. *See Zahani v. Neufeld*, 2006 WL 2246211, at *3 (M.D. Fl. June 26, 2006).  But there is no evidence in the record indicating that Defendants have acted pursuant to that section in withholding adjudication on Elmalky's application.  Nor is there any evidence that they complied with the somewhat detailed procedural requirements set forth in the regulation. *See Patel v. I.N.S.*, 2000 WL 298921, at *2 n.3 (E.D. Mo. Jan. 20, 2000) (concluding that INS failed to present sufficient evidence that it complied with § 103.2(b)(18)'s procedural requirements).  In this sense, the facts of this case are distinguishable from the *Mustafa* decision upon which Defendants rely. *See Mustafa v. Pasquerell*, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006).  The *Mustafa* Court refused to grant mandamus relief to an applicant where the defendants provided an affidavit from the district director attesting that the USCIS was performing background checks pursuant to § 103.2(b)(7) and that they withheld adjudication in accordance with § 103.2(b)(18). *Id.* at *4.  Moreover, the

defendants there provided *evidence* that the USCIS complied with the applicable regulations. *Id.* at *5. Here, in contrast, Defendants merely cite those regulations without stating in their briefing that they have actually acted pursuant to and in accordance with them, much less have they provided evidence to that effect.[3] The Court accordingly finds under the circumstances of this case that the regulations found in 8 C.F.R. § 103.2 fail to relieve Defendants of their obligation to adjudicate Elmalky's application within a reasonable time.

Defendants also maintain that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 deprives this Court of subject matter jurisdiction over Elmalky's claim. Defendants specifically rely on 8 U.S.C. § 1252(a)(2)(B)(ii), which bars courts from reviewing any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" The "subchapter" referred to includes 8 U.S.C. § 1255(a). Defendants argue that the Attorney General's discretionary authority to adjust an alien's status under § 1255(a) is a "decision or action . . . in the discretion of the Attorney General" within the meaning of § 1252(a)(2)(B)(ii) for which judicial review is unavailable. Section 1255(a), however, "specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing." *Duan*, 2007 WL 626116, at *2.

Defendants also argue that the word "action" in § 1252(a)(2)(B)(ii) refers "to an ongoing

---

[3] The declarations submitted by Defendants merely establish that Elmalky's application is pending security background and name checks, not that those checks are being conducted pursuant to § 103.2(b) or that the procedural requirements of § 103.2(b)(18) were followed. (Defs.' Mot. at Exs. 1, 2).

process or a series of acts." (Defs.' Reply at 5-6) (citing to Black's Law Dictionary, which defines "action" as "[t]he process of doing something; conduct or behavior."). Using this definition Defendants posit that the USCIS is currently engaged in the ongoing "action" or "process" of adjudicating Elmalky's I-485 application because it is still awaiting the results of background checks from the FBI.

Applying similar logic, a Virginia court has held that § 1252(a)(2)(B)(ii) works to preclude judicial review of the pace at which the USCIS exercises its discretionary authority to adjust an applicant's status under § 1255(a). *See Safadi v. Howard*, 466 F.Supp.2d 696, 698-700 (E.D. Va. Dec. 20, 2006). The Court is not persuaded by *Safadi*. Defendants would read § 1252(a)(2)(B)(ii) as depriving courts of jurisdiction to review "any . . . *ongoing process* of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]" Even if the Court accepts this reading it would avail Defendants nothing because § 1255(a) does not specifically commit the "process" of adjusting an applicant's status to the Attorney General; it simply says that the Attorney General may make an adjustment in his discretion. Moreover, the title of § 1252(a)(2)(B) – "Denials of discretionary relief" – suggests that the section's primary purpose is to preclude courts from entertaining appeals from disappointed aliens who have had their applications denied. Here Elmalky is not complaining that his application was denied but rather that it was not promptly acted upon. *See Paunescu v. I.N.S.*, 76 F.Supp.2d 896, 900 (N.D. Ill. 1999). The Court has already found that, notwithstanding § 1255(a), the USCIS has a *nondiscretionary* duty to issue *some* decision on an adjustment application within a reasonable time. Because § 1252(a)(2)(B)(ii) does not proscribe judicial review over nondiscretionary actions, it does not strip this Court of jurisdiction over Elmalky's complaint. *See Valenzuela*, 2006 U.S. Dist. LEXIS

61054, at *10-16.

Defendants next argue that jurisdiction is precluded by 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Defendants suggest that this provision reflects Congress's intent to protect immigration officials from interference with the prioritization and adjudication of immigration cases. (Defs.' Mot. at 8). But the title of § 1252 – "Judicial review of orders of removal" – suggests that § 1252(g)'s jurisdiction strip is limited to the removal context. Courts in this district have held as much. *See e.g. Valenzuela*, 2006 U.S. Dist. LEXIS 61054, at *12 n. 7 (finding that § 1252(g) failed to deprive the court of jurisdiction over alien suits to process applications for adjustment of status pursuant to the Diversity Immigrant Visa Program "inasmuch as such suits do not involve any specific steps in the deportation process or any aspect of the deportation process at all."); *Fu*, 2000 WL 1644490, at *2-3 (stating that "it would be reasonable to infer" that § 1252(g) "applies only to INS actions related to deportation or removal."); *Hu*, 2000 WL 425174, at *2 ("The removal of aliens and the adjudication of immigrant applications are separate and distinct actions performed by the INS. Section 1252(g) deprives federal courts of jurisdiction over claims involving the former, not the lat[t]er."); *Dominance Indus., Inc. v. I.N.S.*, 1998 WL 874904, at *2 (N.D. Tex. Nov. 24, 1998) ("Section 1252(g) therefore applies only to actions or decisions of the Attorney General or the INS that arise in relation to proceedings to deport or exclude aliens from the United States."); *Alsharqawi v. Gonzales*, No. 3:06-CV-1165-N (N.D. Tex. March 14, 2007) ("If Congress intended to limit all judicial review of any INS action or inaction, on any matter before the agency, it could have done so. However, by limiting judicial review of 'removal

orders' it specifically left intact judicial review of all other matters properly before the Court.") (quoting *Yu*, 36 F.Supp.2d at 934); *cf. Kale v. I.N.S.*, 37 Fed. Appx. 90, 2002 WL 1022012, at *3 (5th Cir. May 10, 2002) (finding applicability of § 1252(g) "doubtful" where there was no evidence that actions taken by INS were part of deportation proceedings). Congress certainly knew how to expand the scope of § 1252 beyond removal-related actions when it wanted to. For example, Congress specifically broadened § 1252(a)(2)(B)'s jurisdiction-stripping provision to apply "regardless of whether the judgment, decision, or action is made in removal proceedings". The absence of similar language in § 1252(g) suggests that Congress intended to limit § 1252(g) to the removal context. Accordingly, the Court finds that § 1252(g) does not deprive the Court from exercising jurisdiction over Elmalky's mandamus complaint.

Based on the foregoing discussion, the Court finds that the USCIS has a ministerial, nondiscretionary duty to adjudicate Elmalky's I-485 application within a reasonable time. The remaining requirements for mandamus relief are also satisfied for jurisdiction purposes. The Court cannot conceive of (and Defendants have failed to point to) any means of redress that are available to Elmalky to enforce Defendants' duty apart from seeking recourse in the courts. *See Yu*, 36 F.Supp.2d at 932. Finally, Elmalky must show a clear right to the relief sought. He may do this by establishing a prima facie case that Defendants have unreasonably delayed in acting on his I-485 application. *Id.* That application has been pending almost three years without decision. While there is no bright line rule as to when a delay on an application slips into the realm of unreasonableness, some courts have found delays unreasonable when as little as two years have passed from the date the application was filed. *See e.g. Haidari*, 2006 WL 3544922, at *5-6 (over 6-year delay); *Paunescu*, 76 F.Supp.2d at 902 (two-year delay); *Yu*, 36 F.Supp.2d at 935 (two-and-a-half year delay). While,

ultimately, "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case", *Yu*, 36 F.Supp.2d at 935, the Court finds that Elmalky has at least made out a prima facie showing that a near three-year delay is unreasonable. The Court thus finds that it has subject matter jurisdiction to entertain Elmalky's mandamus complaint and that, correspondingly, Elmalky has alleged sufficient facts to state a claim for which relief can be granted.

### III. I- 765 Application for Employment Authorization

Elmalky also seeks to compel Defendants to adjudicate his I-765 application for employment authorization or, alternatively, to issue an interim employment authorization in compliance with 8 C.F.R. § 274a.13(d). That regulation provides that "[t]he district director *shall* adjudicate the application *within 90 days* from the date of receipt of the application by the INS" and that the "[f]ailure to complete the adjudication within 90 days *will result* in the grant of an employment authorization document for a period not to exceed 240 days." 8 C.F.R. § 274a.13(d) (emphasis added). Elmalky filed his most recent I-765 application with the Texas Service Center in Dallas on August 15, 2006. That application has since been transferred to the Missouri Service Center where it remains pending to this day, well beyond 90 days of its filing.

Defendants argue that venue is improper in the Northern District of Texas given that Elmalky's I-765 application is currently pending in Missouri. The relevant venue statute provides that

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is

- 12 -

the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).  When a defendant challenges the propriety of venue, the plaintiff must identify facts establishing that venue is appropriate in the district in which the action is pending.  *Advance Dynamics Corp. v. Mitech Corp.*, 729 F.Supp. 519, 519 (N.D. Tex. 1990).  In deciding whether venue is proper, the Court accepts uncontroverted facts alleged in the complaint as true and resolves conflicts in the parties' affidavits in favor of the plaintiff.  *McCaskey v. Cont'l Airlines, Inc.*, 133 F.Supp.2d 514, 523 (S.D. Tex. 2001).  When a case is filed laying venue in the wrong division or district, the district court may either dismiss the case or transfer it to any district or division of proper venue.  28 U.S.C. § 1406(a).

Elmalky contends that venue is proper in this district in part because he resides in Irving, Texas, which lies within the Northern District of Texas.  For venue purposes, however, an alien "is presumed by law not to reside in any judicial district of the United States regardless of where the alien actually lives."  *Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir. 1983) (citing *Galveston, Harrisburg & San Antonio Ry. Co. v. Gonzales*, 151 U.S. 496, 506-07 (1894)).  Elmalky also asserts that venue is appropriate in this district because a Defendant – Evelyn Upchurch, the Director of the Texas Service Center – resides in Dallas, Texas.[4]  Defendants do not contend that Ms. Upchurch is an improper party to this action.  *Cf. Emmerling v. Cobb*, 642 F.Supp. 1075, 1076 (D. Mass. 1986) (after *sua sponte* dismissal of Boston district director, court ruled that venue was improper in

---

[4]  Although Elmalky fails to mention it, it is also reasonable to presume that Defendant Angela K. Barrows, the Director of the Dallas District Office of the USCIS, resides in this district as well.  (Compl. at ¶ 4).  Because Elmalky's complaint fails to actually allege the residency of either Upchurch or Barrows, the Court will require him to file an amended complaint asserting the residency of those Defendants within 5 days of the date of this order.

Massachusetts because the decision to deny plaintiff's visa petition was made in Portland, Maine).

Even if the Court assumes that venue were otherwise improper as to Elmalky's claim relating to his

I-765 application, venue is unquestionably appropriate as to his claim relating to his I-485

application. The Court may thus exercise pendent venue over the I-765 claim because both claims

derive from a common nucleus of operative facts, and judicial economy is best served by adjudicating

those claims in a single forum. *See Seamon v. Upham*, 563 F.Supp. 396, 398 (D.C. Tex. 1983); 6A

CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1588 (2d ed. 1990) ("It has

been held that when venue has been established for purposes of adjudicating a federal claim, there

is no need to meet the venue requirement as to . . . another related federal claim that has been

combined with the original claim.").

### IV.  Conclusion

For the reasons explained above, the Court DENIES Defendants' motion to dismiss for lack

of subject matter jurisdiction under Rule 12(b)(1), for failure to state a claim under Rule 12(b)(6),

and for improper venue under 12(b)(3). Elmalky is ORDERED to file an amended complaint within

5 days of the date of this order asserting the residency of Defendants Upchurch and Barrows. The

Court will set an evidentiary hearing on Elmalky's complaint for declaratory, mandamus, and

injunctive relief by separate order.

**SO ORDERED.**

**March 28th, 2007**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE